UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELBY SKELTON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CARE.COM, INC.,<br><br>Defendant. | Case No.: 3:20-cv-02086-AJB-DEB<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE, OR IN THE ALTERNATIVE, STAY, OR DISMISS THE COMPLAINT, (Doc. No. 12); AND**<br><br>**(2) DENYING AS MOOT WITHOUT PREJUDICE DEFENDANT'S MOTION TO COMPEL ARBITRATION, (Doc. No. 11)** |

Before the Court are Defendant Care.com's ("Defendant") motions to (1) compel arbitration, (Doc. No. 11), and (2) transfer venue, or in the alternative, stay or dismiss the Complaint for failure to state a claim, (Doc. No. 12). The motions have been fully briefed by both parties. (Doc. Nos. 15–17, 20–21.) The Court has reviewed both motions, and the relevant authority in support and in opposition. For the reasons set forth below, the Court will **GRANT** the motion to transfer venue, and **DENY AS MOOT**, **WITHOUT PREJUDICE** the motion to compel arbitration.

//

## I.   BACKGROUND

This action is for violations under the Telephone Consumer Protection Act of 1991 ("TCPA"). (First Amended Complaint ("FAC"), Doc. No. 14.) Defendant Care.com is a platform connecting caregivers (babysitters, senior care specialists, and tutors) with those seeking care. (*Id.* ¶ 9.) Defendant is a Delaware company, with its principal place of business in Massachusetts. (*Id.*) Plaintiff Shelby Skelton ("Plaintiff") is a caregiver living in San Diego, California. (*Id.* ¶ 8.)

Around August 15, 2013, Plaintiff created an account on Defendant's website. (*See* Declaration of Sarah Marks ("Marks Decl.") ¶ 3.) Plaintiff states she does not recall the "sign up process" or the Terms of Use. (Declaration of Shelby Skelton ("Skelton Decl.") ¶¶ 4–5.) Although Plaintiff initially created the account, she did not complete any required background checks, and did not provide additional information to make her profile visible. (*Id.* ¶ 13.) Shortly after Plaintiff signed up for an account, she discontinued her caregiving search and stopped using the website. (*Id.* ¶ 15.) She would receive occasional emails from Defendant until December 29, 2014, at which point, these emails largely stopped. (*Id.* ¶ 16.) Then, years later on August 7, 2020, Defendant sent Plaintiff an email requesting action from Plaintiff in order to keep her account active. (*Id.* ¶ 22.) Plaintiff, having no intention of keeping her account, took no action. (*Id.*) The account was then deactivated in August 2020. (*Id.*) Plaintiff alleges that she received unsolicited text messages from Defendant on August 19, 2020. (*Id.* ¶ 13.) The text messages sent to Plaintiff's cellular telephone were sent via Defendant's SMS Blasting Platform, i.e., an "automatic telephone dialing system," ("ATDS") according to Plaintiff. (*Id.* ¶ 17.)

Plaintiff filed the TCPA Complaint on October 23, 2020. (Doc. No. 1.) On January 16, 2021, Defendant filed two motions: (1) a motion to transfer venue based on a forum selection clause, or in the alternative, stay or dismiss, and (2) a motion to compel arbitration based on an arbitration agreement. (Doc. Nos. 11–12.) Plaintiff filed an Amended Complaint on January 14, 2021. (Doc. No. 14.) The motions are fully briefed. This order follows.

## II. DISCUSSION

### A. Defendant's Account Registration Process

In evaluating the merits of Defendant's motions, a review of Defendant's account registration process will be necessary to determine whether either a forum selection clause or arbitration agreement exists.

To use Defendant's services, all users must first create an online account through Defendant's website. (*See* Declaration of Chuck Burt ("Burt Decl.") ¶¶ 1, 3.) Plaintiff registered for an account on August 15, 2013. (*Id.*) In order to register, Plaintiff had to visit Defendant's website, www.care.com. (*Id.* ¶¶ 6–7.) Defendant explains that before Plaintiff could use the website, she had to fill out some basic information (email address, password, name, how she heard about the website) and then click a "Join Now" button. (Doc. No. 11-1 at 8.) Based on business records, Defendant reproduced the way the page looked when Plaintiff registered for an account:



(*See* Burt Decl., Ex. A.)

Above this "Join Now" button, was a statement which advised, "[b]y clicking Join Now, you agree to the Terms of Use and Privacy Policy." (*Id.*) Defendant claims that these

3

1 | "Terms of Use," which Plaintiff agreed to when she signed up for Defendant's services,
2 | contained a forum selection clause. (Doc. No. 12-1 at 12.) The forum selection clause
3 | provided:

> Unless you and we agree otherwise, in the event that the Arbitration Agreement 13 is found not to apply to you or to a particular claim or dispute (except for small-claims court actions), either as a result of your decision to opt-out of the Arbitration Agreement or as a result of a decision by the arbitrator or a court order, you agree that any claim or dispute that has arisen or may arise between you and Care.com *must be resolved exclusively by a state or federal court located in the Commonwealth of Massachusetts*.

(Marks Decl., Ex. A ¶ 12.)

### B. Plaintiff's Evidentiary Objections

#### 1. Exhibit A to the Burt Declaration

As a preliminary matter, an evidentiary dispute surrounds Exhibit A (pictured above) of the Burt declaration. Mr. Burt, Defendant's Director of Product Management, was responsible for designing and developing various pages, features, and functions of Defendant's website, Care.com, and related mobile applications. (*See* Burt Decl. ¶ 1.) At the request of counsel, Mr. Burt reviewed Defendant's business records pertaining to Plaintiff's visitor and member account activity. (*Id.* ¶ 4.) Mr. Burt also reviewed business records relating to the designs of webpages that were visible to users who enrolled in the Care.com website around the time of Plaintiff's enrollment, as well as archival copies of the actual Care.com website maintained by the Internet Archive Wayback Machine at www.archive.org. (*Id.*) Exhibit A, Mr. Burt declares, is a copy of the design proof for the account creation form that was published to the Care.com website on or around February 21, 2013. (*Id.* ¶ 6.)

Plaintiff objects to this evidence, arguing she was unable to locate, through the Wayback Machine, the screenshot presented by Defendant in Exhibit A. (Doc. No. 17 at 12.) Plaintiff's counsel also located another sign-up page that appeared on Care.com in early August of 2013, which did not contain the link to the Terms of Use. (*Id.*) For these

reasons, Plaintiff objects to Exhibit A based on authenticity, hearsay, and incomplete writing. (*Id.*) In response to these evidentiary objections, Defendant replies that Plaintiff fundamentally misunderstands the evidence. (*See* Doc. No. 21 at 3.) Defendant explains that Mr. Burt relied on internal business records to confirm that the website, at the time Plaintiff registered for an account, contained a hyperlink to the Terms of Use. (*Id.*) It is true that Mr. Burt reviewed archival copies of the webpage through the Wayback Machine, but Defendant maintains that Mr. Burt also had an independent basis to conclude that the webpage, on the day Plaintiff accessed it, had a Terms of Use link. (*Id.*)

Plaintiff's evidentiary objections are overruled. Mr. Burt did not purport to claim that he obtained Exhibit A from the Wayback Machine. (*Id.*) Exhibit A is instead a copy of the design proof for the account creation that was published around February 21, 2013. (Burt Decl. ¶ 6.) As such, Exhibit A can be more appropriately characterized as a business record. To clear up any uncertainty, Mr. Burt also offers a supplemental declaration[1] further explaining that "Exhibit A depicts the account creation form as it appeared in a Javascript-driven box on the Care.com visitor homepage." (Supplemental Burt Decl. ¶ 3.) Mr. Burt also clarifies that "[w]hile I did not take Exhibit A from the Wayback Machine, I reviewed archival copies of Care.com webpages that were available via the Wayback Machine to confirm that the design and layout of those archived pages were consistent with what I found in Care.com's business records." (*Id.* ¶ 5.)

"A screenshot of online content may be authenticated by testimony of the person who took the screenshot, so long as the screenshot also contains circumstantial indicia of

---

[1] Plaintiff also objects to the supplemental declaration on the basis that a party may not introduce evidence for the first time in a reply brief. (Doc. No. 22 at 2.) To the extent that Plaintiff's objection can be construed as a request to strike evidence presented in a reply brief, the Court has the discretion to consider new evidence presented on reply, particularly "if the new evidence appears to be a reasonable response to the opposition." *Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1249 (N.D. Cal. 2018). That is the case here. Mr. Burt's supplemental declaration is in response to allegations that Exhibit A was a screenshot from the Wayback Machine. So, the Court overrules these objections.

authenticity." *Iglesia Ni Cristo v. Cayabyab*, No. 18-CV-00561-BLF, 2020 WL 1531349, at *4 (N.D. Cal. Mar. 31, 2020), reconsideration denied, No. 18-CV-00561-BLF, 2020 WL 3833281 (N.D. Cal. July 8, 2020). Here, Mr. Burt sufficiently authenticates that Exhibit A is not a webpage from the Wayback Machine but is instead a screenshot reflecting a business record. Mr. Burt's supplemental declaration provides, in extraordinary detail, the innerworkings of Defendant's website. The foundation for this business record has been properly laid and does not constitute hearsay. Given that Mr. Burt has provided adequate clarification to cure any evidentiary deficiencies, Plaintiff's objections applicable to Exhibit A are **OVERRULED**.

    2.  **Exhibit B to the Marks Declaration**

Next, Plaintiff mounts a challenge to Exhibit B to the Marks declaration. (Doc. No. 17 at 13.) Plaintiff points out that this exhibit is Defendant's 2020 Terms of Use. (*Id.*) Plaintiff objects based on lack of foundation and relevance because there is no evidence showing whether these terms were ever presented to or agreed to by Plaintiff, especially considering she signed up for the account back in 2013. (*Id.*)

Plaintiff's objections are overruled. The Court has reviewed the declaration and briefing, and notes that while Exhibit B is the 2020 Terms of Use, Defendant has also provided the 2013 Terms of Use, dated June 14, 2013. (Marks Decl. ¶ 5.) This would have been the version of the Terms of Use in effect when Plaintiff registered for an account. Defendant primarily cites to Exhibit B only to make the narrow point that Massachusetts law governs the version of the Terms of Use that was in effect when Plaintiff first joined Care.com, while the current 2020 version is governed by Delaware law. (Doc. No. 11-1 at 13 n.4.) Because Defendant's reliance on Exhibit B is limited to supporting this focused statement—and not to suggest that this version applies to Plaintiff's claim as a whole—Plaintiff's objections to Exhibit B are **OVERRULED**.

    C.  **Motion to Transfer Venue**

The Court will now consider the motion to transfer venue to determine whether it should even be the forum to consider this matter. Defendant requests that this case be

transferred to the District of Massachusetts pursuant to a forum selection clause Plaintiff purportedly agreed to when she assented to the Terms of Use at the time of registering for her account. (Doc. No. 12-1 at 12.) Plaintiff responds by arguing that she has not used or accessed the account for seven years, no agreement between the parties was formed, and that any evidence of the contract is inherently unreliable. (Doc. No. 17 at 8.)

Pursuant to 28 U.S.C. § 1404(a), a court "may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A § 1404(a) analysis differs if a valid forum-selection clause is present. *See Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 52 (2013) (internal quotations omitted). When there is a valid forum-selection clause, "a district court should ordinarily transfer the case to the forum specified in that clause" with exception of "[o]nly under extraordinary circumstances unrelated to the convenience of the parties . . . ." *Id.* at 581 (emphasis added). Accordingly, the Supreme Court modified the § 1404(a) analysis in three ways: (1) plaintiff's choice of forum has no weight, and that the burden falls on the plaintiff to show that transfer to the forum is unwarranted; (2) a district court should only consider public-interest factors; and (3) the transfer of venue will not carry with it the original venue's choice of law rules. *Id.* at 63–65.

Plaintiff argues that even if Exhibit A to the Burt declaration is not stricken, the Terms of Use, which contains the forum selection clause, is unenforceable for two reasons. First, Plaintiff argues no contract existed between Plaintiff and Defendant because she did not have reasonable notice of the Terms of Use, and there was no reasonable manifestation of assent to the agreement. (Doc. No. 15 at 14.) Second, Plaintiff contends that the Terms of Use are outside the scope of this dispute. (Doc. No. 17 at 13.) The validity of these two argues are addressed below.

### a)   Whether A Contract Existed

Plaintiff first argues that no contract existed between her and Defendant. (Doc. No. 17 at 13.) As a threshold matter, the Court observes that while this matter was filed in

7

California, the Terms of Use contemplated that Massachusetts law would apply. (*See* Marks Decl., Ex. A ¶ 14.) But regardless of the choice of law, California and Massachusetts law are in accord with regards to contract formation. Thus, the Court will cite to Massachusetts law for this analysis. To determine whether a valid contract existed, courts apply a two-prong test focusing on whether there is (1) reasonable notice of the terms of the contract, and (2) a reasonable manifestation of assent to those terms. *See Kauders v. Uber Technologies, Inc.*, 485 Mass. 557, 572 (2021.)

### (1)   Reasonable Notice

As to the first prong, Plaintiff opens by arguing the evidence is unclear as to which page of the website Plaintiff would have seen. (*See* Doc. No. 15 at 15.) However, as already explained above, the Court rejects this argument because Defendant, through Mr. Burt, has established that the Terms of Use hyperlink existed the day Plaintiff registered on Defendant's website. Next, Plaintiff argues that even if the Court accepts Defendant's evidence of the webpage containing the Terms of Use, the configuration of the webpage did not provide reasonable notice to consumers of an offer to enter into a contract. (*Id.* at 16.)

Plaintiff attempts to analogize her case to *Kauders v. Uber Technologies, Inc.*, a case out of the Massachusetts Supreme Judicial Court. *See* 159 N.E.3d 1033 (2021). In *Kauders*, the court explained that for an online contract to have been formed under Massachusetts law, the user of the online interface must have been given "reasonable notice of the terms" of the agreement and must have made a "reasonable manifestation of assent to those terms." *Id.* at 1049. *Kauders* further explained that the "reasonable notice" requirement is plainly satisfied when a party to the online contract has "actual notice" of its terms or "must somehow interact with the terms before agreeing to them." *Id.* The *Kauders* court explained that notice is more likely reasonable where, "the nature, including the size, of the transaction" suggests a contract is being entered. But, even absent actual notice, the reasonable notice requirement may be met if "the totality of the circumstances" indicates that the user of the online interface was provided with such notice. *Id.* The court explained

that notice is more likely reasonable if, "the notice conveys the full scope of the terms and conditions," and where the interface adequately communicates the terms of the agreement. *Id.* at 1049–50. *Kauders* did note, in finding no online contract to have been formed, that the online interface at issue, "did not require the user to scroll through the conditions or even select them," *id.* at 1052, and that it "allow[ed] the registration to be completed without reviewing or even acknowledging the terms and conditions," *id.* at 1054.

Here, upon review of the totality of the circumstances, the Court holds that reasonable notice was given to Plaintiff. First, the sign-up page Plaintiff would have landed on featured a simple box with a minimalist appearance. It did not require that Plaintiff click through several pages before encountering the phrase, "[b]y clicking Join Now, you agree to the Terms of Use and Privacy Policy." This contrasts with the situation in *Kauders* wherein the terms were not displayed until the third page of the registration process. *Kauders*, 159 N.E.3d at 1053. Here, Defendant displayed conspicuously the hyperlinked "Terms of Use" in a different color from the rest of the text. The Terms of Use was also placed immediately above the "Join Now" button. And as *Kauders* explained, whether notice is reasonable depends on "the nature, including the size, of the transaction." Plaintiff here was a caregiver looking to provide services through Defendant's platform, and gain employment. The "Join Now" button in green suggested that Plaintiff was agreeing to join the network of potential caregivers. The weight of this agreement can be contrasted with the situation in *Kauders* wherein users simply seeking a ride using the Uber app created a contract with the company by signing up for Uber's services. *Id.* at 575.

In sum, considering the weight of the transaction, the entire interface of the sign-up page, namely, the clarity, simplicity, and straightforward presentation of the terms, Plaintiff was on reasonable notice of the Terms of Use.

### (2) Manifestation of Assent

Next, the Court turns to whether Plaintiff manifested assent to the Terms of Use. When considering whether the user assented to the terms of the online agreement, courts consider the specific actions required to manifest assent. A user may be required to

expressly and affirmatively manifest assent to an online agreement by clicking or checking a box that states that the user agrees to the terms and conditions. *See, e.g.*, *Emmannuel v. Handy Techs., Inc.*, 442 F. Supp. 3d 385, 389 (D. Mass. 2020) (user required to affirmatively indicate assent by clicking "Accept" button); *Covino v. Spirit Airlines, Inc.*, 406 F. Supp. 3d 147, 152–53 (D. Mass. 2019) (enforcing agreement where user checked box acknowledging agreement with terms and conditions set forth in offeror's contract of carriage). These are often referred to as "clickwrap" agreements, and they are regularly enforced. Requiring a user to expressly and affirmatively assent to the terms, such as by indicating "I Agree" or its equivalent, serves several important purposes. It puts the user on notice that the user is entering into a contractual arrangement.

Here, Plaintiff manifested assent to the Terms of Use. To sign up for Defendant's services, Plaintiff would have been required to click the "Join Now" button to proceed further. Immediately above this button, was the notice given to Plaintiff that by clicking "Join Now," she was agreeing to "the Terms of Use and Privacy Policy." Therefore, in order to continue with the sign-up process and register for an account, Plaintiff necessarily had to have clicked the "Join Now" button. As such, sufficient assent was demonstrated. *See Dixon v. Michael Kors Retail, Inc.*, 468 F. Supp. 3d 409, 413 (D. Mass. 2020) (suggesting that the language "[b]y clicking on this box you agree to the terms and conditions outlined by this agreement. This is a legally binding agreement" would indicate unambiguous assent); *Crawford v. Beachbody, LLC*, 2014 WL 6606563 (S.D. Cal. 2014) (user assented to terms by clicking "PLACE ORDER" button appearing immediately below disclaimer informing user that by clicking the button, user was agreeing to the site's terms).

### b) The Scope of the Agreement

Having found that a contract existed between Plaintiff and Defendant, the next step is to determine whether the contract applies to this dispute. Plaintiff contends the TCPA claims are outside the Terms of Use, including the forum selection clause and arbitration agreement. (Doc. No. 15 at 19.) Plaintiff's objection is that to the extent an agreement

existed, that agreement has now expired. (Doc. No. 15 at 20.) In arguing that the agreement did not encompass her TCPA allegations, Plaintiff also reasons that a consumer would not understand that the terms of the contract would apply to unrelated tortious acts committed by Defendant. (*Id.*) In response, Defendant maintains that Plaintiff's causes of action are related to Plaintiff's decision to enroll online in August 2013. (Doc. No. 21 at 8.) The Court agrees with Defendant's position.

At the time of Plaintiff's registration with Defendant online, newly enrolled care providers had an opportunity to sign up to receive text messages alerting them to new jobs located near them, and/or new messages from families seeking their services. (Supp. Burt Decl. ¶ 13.) Defendant's business records show that within an hour of enrolling online, Plaintiff provided her telephone number to Defendant, and signed up to receive text alerts about pet care job opportunities. (*Id.* ¶¶ 12–14.) She then received and returned a verification code to conform her telephone number. (*Id.* ¶ 15.) The form that providers used to request these alerts required them to provide a phone number and wireless carrier, and then select whether they want new job alerts, new message alerts, or both. (*Id.*) A partial design proof of this form, which Mr. Burt retrieved from Care.com's business records, is attached at Exhibit C to Mr. Burt's supplemental declaration, and is shown below:



In the FAC, Plaintiff asserts that around August 19, 2020, Plaintiff began receiving numerous unsolicited text messages from Defendant, in an attempt to solicit Plaintiff to purchase Defendant's products or services. (FAC ¶ 13.) The text messages apparently read as either one of the following:

- "New Care.com jobs in your area: 1 Pet Care job";
- "New Care.com jobs in your area: 2 Pet Care jobs";
- "New Care.com jobs in your area: 3 Pet Care jobs";
- "New Care.com jobs in your area: 4 Pet Care jobs"; or
- "New Care.com jobs in your area: 6 Pet Care jobs".

Although forum selection clauses are presumptively valid, they do not generally survive a contract's expiration. *Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 206 (1991); *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 10 (1972). There are exceptions to this rule. Under *Litton*, a forum selection clause survives after a contract expires only (1) where it involves facts and occurrences that arose before expiration; (2) where an action taken after expiration infringes a right that accrued or vested under the agreement; or (3) where, under normal principles of contract interpretation, the disputed contractual right survives the expiration of the remainder of the agreement. *See* 501 U.S. at 206.

Because Plaintiff's TCPA claims are seemingly related to Plaintiff's registration of her phone number with Defendant, the Court cannot conclude that the Terms of Use are irrelevant. After registering for an account on Defendant's webpage, Plaintiff provided her telephone number to be apprised of new caregiving opportunities. She now asserts Defendant has violated the TCPA by sending her text messages regarding new caregiving jobs in her area. Therefore, Plaintiff's allegations that the forum selection clause should not apply is unavailing.[2] Although Plaintiff may have since deactivated her account, the

---

[2] Plaintiff also makes arguments regarding unconscionability. (Doc. No. 17 at 15.) She refers the Court to her brief in opposition to the motion to compel arbitration. (*Id.*) There, Plaintiff maintains that the arbitration agreement Defendant seeks to enforce is both procedurally and substantively unconscionable.

claims she now asserts against Defendant bears relation with facts surrounding whether she provided her telephone number to Defendant. Accordingly, the matter "involves facts and occurrences that arose before expiration," of the agreement and the forum selection clause is enforceable.

### c)   Unreasonableness of the Forum Selection Clause

Next, Plaintiff mounts three arguments as to why she believes the forum selection clause to be unreasonable. First, Plaintiff argues that the forum selection clause and contract itself are the result of overweening bargaining power by Defendant, and Plaintiff did not read or negotiate any of the terms. (Doc. No. 17 at 15.) Second, Plaintiff contends she will be deprived of her day in court because she would be forced to litigate her claim in Massachusetts. (*Id.* at 16.) Third, Plaintiff claims enforcing the forum selection clause would contravene California's public policy in encouraging the use of the class action device. (*Id.*) The Court disagrees.

Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen*, 407 U.S. at 10. "[T]he forum selection should control absent a strong showing that it should be set aside." *Id.* at 15 (emphasis added). The Supreme Court in *Bremen* recognized three reasons that would make enforcement of a forum selection clause unreasonable: (1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought. *See also Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir.1998) (citing and quoting *Bremen*, 407 U.S. at 12–13, 15, 18 (quotations omitted)).

First, generalized contentions that Plaintiff neither read nor negotiated the terms are

---

(*Id.*) However, because these arguments do not appear to be specific to the forum selection clause, the Court does not address them.

insufficient to establish unreasonableness in a forum selection clause. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94 (1991) (finding forum-selection clauses to be binding even if the contract in question was not negotiated). Second, the Court is not persuaded that Plaintiff will lose her opportunity to be heard simply by having to litigate in Massachusetts. Indeed, courts have enforced forum selection clauses under analogous circumstances. *See, e.g., King v. Hausfeld*, No. C-13-0237 EMC, 2013 WL 1435288, at *13–15 (N.D. Cal. Apr. 9, 2013) ("The forum selection clause in the arbitration agreement is of the sort often found in arbitration agreements and other contracts. . . .. Plaintiff has failed to establish that the operation of this clause is so 'overly harsh or one-sided' as to be unconscionable."). Third, Plaintiff cites to California public policy of encouraging class actions, but California courts have also held that a forum selection clause should be given effect so long as the choice is reasonable and has "some logical nexus to one of the parties or the dispute." *Am. Online, Inc. v. Sup. Ct.*, 90 Cal. App. 4th 1, 11–12 (2001).

Accordingly, nothing suggests that it would be patently unreasonable to enforce the forum selection clause.

### d) Other Factors Regarding Transfer

Finally, Plaintiff argues that venue is proper in this district, and so, the case should remain here. (Doc. No. 17 at 16.) Under 28 U.S.C. § 1404(a), the court may transfer an action to any other district or division where it might have been brought "[f]or the convenience of the parties and witnesses and in the interest of justice." *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992). A convenience transfer under § 1404(a) requires the court to assess a variety of factors and "involves subtle considerations and is best left to the discretion of the trial judge." *Sparling v. Hoffman Construction*, 864 F.2d 635, 639 (9th Cir. 1988). Relevant factors to consider in determining whether to transfer this case pursuant to § 1404(a) include: (1) the plaintiffs' choice of forum; (2) the extent to which there is a connection between the plaintiffs' causes of action and this forum; (3) the parties' contacts with this forum; (4) the convenience of witnesses, (5) the availability of compulsory process to compel attendance of unwilling

non-party witnesses; (6) the ease of access to sources of proof; (7) the existence of administrative difficulties resulting from court congestion; (8) whether there is a "local interest in having localized controversies decided at home"; (9) whether unnecessary problems in conflict of laws, or in the application of foreign law, can be avoided; and (10) the unfairness of imposing jury duty on citizens in a forum unrelated to the action. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

The Court is not particularly persuaded by arguments regarding the convenience of litigation in this Court over Massachusetts. For one, this case is a putative nationwide class action, and so, Plaintiff's choice of forum is accorded less weight. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("[W]hen an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight."). Furthermore, in this modern day of advanced technology, discovery and litigation may be conducted in either California or Massachusetts. This is especially true because discovery in this TCPA case will necessarily entail significant electronic discovery. With all else being equal, there is nothing especially compelling for the Court to simply disregard the forum selection clause. The Court will thus respect the forum selection clause and honor the agreement's selection of a Massachusetts forum.

Because the Court finds merit in Defendant's argument that this case should be transferred, the Court need not reach the alternative requests for a stay or dismissal of the Complaint.

### III.   CONCLUSION

For the reasons given, the Court (1) **GRANTS** the motion to transfer venue, and (2)

//
//
//
//

**DENIES AS MOOT WITHOUT PREJUDICE** the motion to compel arbitration. (Doc. Nos. 11–12.) The Clerk of the Court is **DIRECTED** to transfer this action to the District of Massachusetts. The Clerk of the Court is also **DIRECTED** to close this case.

   **IT IS SO ORDERED.**

Dated: August 17, 2021

Hon. Anthony J. Battaglia
United States District Judge